# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FLORENCE SMITH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | No. 14 C 8453<br><br>Magistrate Judge<br>Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Florence Smith's claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security (Doc. No. 15) is construed as a motion for summary judgment. For the reasons that follow, Smith's motion for summary judgment is GRANTED and the Commissioner's cross-motion for summary judgment (Doc. No. 23) is DENIED.

## BACKGROUND

### I. PROCEDURAL HISTORY

Smith applied for disability insurance benefits on August 11, 2008, alleging disability since December 31, 2007 due to rheumatoid arthritis, carpal tunnel syndrome, and an arteriovenous ("AV") malformation in the right lower leg. (R. 92, 118.) Smith's claim was denied initially and upon reconsideration, after which she timely requested a

hearing before an Administrative Law Judge ("ALJ").  (R. 62, 65, 69.)  At a hearing held on July 23, 2009, Smith personally appeared and testified before the ALJ.  (R. 35–55.) On September 16, 2009, the ALJ issued a decision denying Smith's claim for benefits.  (R. 24–34.)  When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g).  *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Smith then sought judicial review, and the district court affirmed the ALJ's decision.  (R. 552, 554.)  Smith then appealed to the Court of Appeals for the Seventh Circuit, which on March 19, 2012 reversed the judgment of the district court and remanded the matter for further administrative proceedings for reasons that are addressed below.  (R. 586.)

At a new administrative hearing held before the same ALJ on March 21, 2013, Smith, represented by counsel, again appeared and testified.  (R. 512–33.)  In a decision dated June 24, 2013, the ALJ found that Smith began qualifying for disability benefits as of her 55th birthday on January 24, 2010.  (R. 499.)  However, the ALJ also found that Smith was not disabled, and therefore ineligible for benefits, prior to that date.  (*Id.*)  After the Appeals Council twice denied review of that decision, Smith timely filed this appeal.  (R. 430, 485); (Doc. No. 1).

## II.    MEDICAL EVIDENCE

### A.    Treatment Records

Smith worked for twenty years as an environmental technician for the State of Illinois.  (R. 107.)  On July 19, 2005, she spoke to her primary care physician, Tanja S. Boskov, M.D., regarding pain in her hands.  (R. 193.)  A Doppler study performed on her arms on July 22, 2005 was normal.  (R. 205.)  Neurologist Donald H. Lussky, M.D.

2

evaluated Smith on August 5, 2005 and diagnosed bilateral carpal tunnel syndrome, for which he prescribed wrist splints. (R. 189–92.) At a follow-up appointment in September, Smith's carpal tunnel symptoms had improved with the splints. (R. 198.)

Smith also has arthritis, which has been treated by rheumatologist Eric J. Munn, M.D. (R. 296–300). In February 2006, Dr. Munn opined that Smith might "perhaps" require some restrictions at work because of problems in her hands. (R. 296.) She had stopped taking arthritis medications, including prednisone. (*Id.*) She was still using wrist splints at night for her carpal tunnel syndrome. (R. 296, 299.) In March, laboratory testing showed elevated C-reactive protein, and a physical exam revealed slight swelling in her thumb and wrist joints and swelling and tenderness in the proximal interphalangeal joints of her fingers. (R. 298.) Dr. Munn assessed polyarthritis. (R. 299.) Because her condition had previously been unresponsive to Prednisone, he prescribed Plaquenil. (*Id.*) On May 8, 2006, Dr. Boskov noted that Smith was on restricted duty at work "due to the joint aches and pains," and that she still had some tingling in her fingers as well as visible swelling in her elbows. (R. 391–92.)

Smith also has a history of AV malformation[1] in her lower right leg that developed subsequent to a right ankle fracture in 1979. (R. 231.) On May 13, 2008, she reported to Dr. Boskov that she had developed swelling in her right leg after a 16-hour car ride out of state, and that the swelling had not gone down for two weeks. (R. 284.) The swelling was accompanied by pain and redness in the area of Smith's AV malformation.

---

[1] An arteriovenous malformation is a rare defect in the vascular system. In patients with AV malformations, a "snarled tangle of arteries and veins" causes veins to re-route oxygenated blood back to the arteries instead of into capillaries, interfering with blood circulation to the surrounding tissue. *See* https://www.nlm.nih.gov/medlineplus/arteriovenousmalformations.html; http://www.mountsinai.org/patient-care/service-areas/neurosurgery/areas-of-care/cerebrovascular-center/arteriovenous-malformations/peripheral-arteriovenous-malformations. (all websites in this Order last visited July 1, 2016.)

3

(R. 284, 318.) Dr. Boskov suspected cellulitis. (R. 285, 318.) Blood tests results were inconsistent with cellulitis, but X-rays revealed "worrisome" evidence of possible osteomyelitis (bone infection) in her distal tibia. (R. 318, 323.) Additionally, an arteriogram demonstrated extensive large AV malformations arising from all three of the arteries in her lower leg. (R. 320.) In notes dated May 16, 2008, Barbara E. Potaczek, M.D. wrote that Smith might require staged embolization procedures, which are multiple surgeries to block off veins, in the future. (R. 318.) Smith's case was to be presented in conference to determine the best course of treatment. (*Id.*) In discharge instructions, Smith was advised to follow up with Dr. Boskov in three to five days, to take Tylenol with codeine up to every four hours as needed for pain, and to elevate her right leg when sitting. (R. 240.)

When Smith followed up with Dr. Boskov on May 27, 2008, she still had moderate edema, and reported that she was wearing support tights and trying to elevate her leg when possible. (R. 281–82.) Two weeks later, on June 10, 2008, Smith's edema was rated as "severe" but "better," and she still had pain and a bruit (a sound or murmur heard through a stethoscope) at the site of her AV malformations. (R. 279.) Dr. Boskov noted that staged embolization procedures might be necessary and referred her to Dr. Robert Vogelzang, Chief of Vascular and Interventional Radiology at Northwestern Memorial Hospital. (R. 280, 948.) On December 30, 2009, Smith complained to Dr. Boskov that her leg pain had increased. (R. 925.) She displayed severe edema and erythema (reddening of the skin) on her right leg. (R. 925–26.) She had not yet seen the vascular radiologist as recommended. (R. 926.)

4

Smith later did seek treatment for her AV malformations from Dr. Vogelzang. (R. 1043–98.) On September 17, 2010 she underwent numerous diagnostic tests, including an MRI and arteriograms, which indicated multiple areas of intravenous shunting, occurring in both soft tissue and bone. (R. 1094.) On November 12, 2010, Dr. Vogelzang performed a series of catheterization procedures. (R. 1076–1077.) Arteriography performed at the same time showed that her long-standing AV malformation included a arteriovenous fistula[2] resulting from an artery feeding directly into a vein. (R. 1077.) On January 14, 2011, Smith continued her treatment with additional catheterizations, performed by Fellow Jeremy Collins, M.D. under the supervision of Dr. Vogelzang, with arteriography to monitor progress from the prior procedures. (R. 1053–54.) Notes indicated that further procedures would be required. (R. 1054.)

On September 20, 2011, Dr. Vogelzang wrote a letter describing Smith's condition, stating that it caused "persistent and significant pain and swelling" in her leg with limited mobility. (R. 948.) Dr. Vogelzang explained that treatment of large AV malformations like Smith's is performed incrementally in order to reduce risk, and that future procedures would be needed. (*Id.*) Finally, he opined that Smith would be unable to carry out her daily activities and would need to receive disability benefits. (*Id.*)

### B. Consultants' Reports

On January 8, 2010, Smith was examined by consultative examiner Dilip Patel, M.D., who prepared a Disability Report documenting the visit. (R. 795–801.) Smith reported that prolonged sitting or standing increased the swelling in her right leg. (R.

---

[2] *See* http://www.mayoclinic.org/diseases-conditions/arteriovenous-fistula/basics/definition/CON-20034876?p=1

5

795.) She also reported that both hands were stiff in the morning with intermittent pain, and that she had trouble opening bottles. (R. 795, 797.) Dr. Patel observed that Smith's right lower leg was five inches larger in circumference than the left. (R. 796.) She had edema in the lower two-thirds of the right leg and right foot, as well as skin discoloration on the right ankle. (R. 796.) Dr. Patel also assessed mild osteoarthritis in the fingers of both hands, and made note of limitations in wrist motion. (R. 797, 800.)

On January 19, 2010, reviewing consultant Reynaldo Gotanco, M.D. completed a Residual Functional Capacity Assessment. (R. 802–809.) Dr. Gotanco indicated that Smith has edema, and noted the limitations she reported to Dr. Patel. (R. 809.) Nevertheless, he found her capable of occasionally lifting up to twenty pounds, frequently lifting up to ten pounds, standing or walking for about six hours in a workday, and sitting for about six hours in a workday. (R. 803.) He opined that she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs, though she can never climb ladders, ropes, or scaffolds. (R. 804.) He found no other limitations. (R. 802–809.) Dr. Gotanco's assessments were later affirmed by state agency consultant Bharati Jhaveri, M.D. and by consultant Seymour Oberlander, M.D. in April and May 2010, respectively. (R. 860–64.)[3]

### C. Smith's Testimony

In August and December 2008, Smith completed two substantially similar Function Reports. (R.135–43, 158–68.) She reported that she cannot walk or stand for

---

[3] A second consultative exam and Residual Functional Capacity Assessment were performed in 2011. (R. 949–59.) The RFC assessment concludes that Smith could only stand or walk for two hours a day, which corresponds with sedentary work. (R. 954.) Because these reports relate to Smith's condition more than a year after her fifty-fifth birthday in 2010, as of which time she became disabled under the Medical-Vocational Rules, they are of limited value to the relevant inquiry, which is whether the ALJ adequately supported her finding that Smith was not disabled prior to January 24, 2010.

6

long periods because of swelling in her legs. (R. 136, 159.) She estimated she can walk twenty minutes before needing to rest. (R. 140, 163.) She tries to keep her feet up as much as possible and wears compression stockings in order to reduce the swelling in her legs. She does hand exercises for the pain in her hands, but sometimes has trouble using her hands to lift things or to put on her compression stockings. (R. 135–36, 140, 158–59.) Smith's husband also completed a Third Party Function Report in August 2008 in which he reported that Smith spends most of the day with her leg elevated to keep her swelling and pain under control. (R. 127–28.)

At her first hearing on July 23, 2009, Smith testified that she stopped working December 31, 2007 because she was having problems with her hands and legs. (R. 35. 42.) She had taken medications but could not tolerate the side effects. (R. 42–43.) She testified that her right leg swells "every day, all day," and that she elevates it every day as much as she can. (R. 44.) When she has to stand a long time, she shifts most of her weight to the left leg. (*Id.*) She could probably walk "a couple of blocks," but she would rest if her leg started hurting, or, "if the swelling is up," she would need to sit somewhere and put her leg up. (R. 43–44.) Her hands get sore and sometimes numb, and it hurts to pick things up. (R. 46.) She quit bowling because it hurt to pick up the ball. (R. 50.) Cold weather exacerbates her symptoms. (R. 46.)

Smith completed additional function reports in April 2010 and January 2011. (R. 709-726.) She again averred that her hand and leg symptoms limit her activities, and that she needs to keep her leg elevated when seated to prevent swelling. (R. 714, 723.) She is able to go fishing, but less than she used to. (R. 713, 719.) She sometimes cooks small meals or, at times, dinner. (R. 711, 719.) She cleans the house,

7

sometimes starting tasks then stopping and coming back hours later to finish. (R. 711, 720.) In her April 2010 report, she also made note of a recent diagnosis of diabetes, for which she was attending classes, and a scheduled surgery for an unrelated condition. (R. 716–17.) In the January 2011 report, she indicated that she had recently begun using a cane at times to walk. (R. 724.)

In a second hearing which took place on March 21, 2013, Smith again testified that she left her prior employment due to the pain in her leg and her hands. (R. 521, 523.) Her recent surgeries had reduced the pressure in her legs, but not the pain, which she described as an ache. (R. 522–23.) Water pills have not helped to reduce the swelling. (R. 524.) She spends "most of the day," or "about 80 percent," with her leg elevated up on a chair or on pillows. (R. 520, 524.) At night, she elevates her leg on pillows. (R. 520–21.) Her leg swelling and pain worsen when she stands or walks for a long time, or whenever her leg is not elevated. (R. 524.) She takes Advil for pain but preferred not to take hydrocodone even when it was prescribed, for fear of developing dependence. (R. 521.) To relieve hand pain she uses paraffin wax treatments or runs her hands under hot water. (R. 527.)

### D. Vocational Expert Testimony

At the March 2013 hearing, Vocational Expert ("VE") Cheryl Hoiseth characterized Smith's past employment as semi-skilled as described by Smith. The VE asked whether Smith's past job could be performed by a hypothetical person with the same age, education, and work experience as Smith, who could lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk a total of six hours in an eight hour workday, and sit at least six hours in an eight hour workday; never climb

8

ladders, ropes, or scaffolds; only occasionally climb ramps and stairs, balance, stoop, crouch, kneel, or crawl; and who must avoid concentrated exposure to extreme cold. (R. 529–30.) The VE said that such a person could not perform Smith's past work because it entailed exposure to cold, but the person could perform the jobs of office clerk, office helper, information clerk, or counter clerk. (R. 530.) If the person needed a sit/stand option allowing her to sit for one or two minutes after standing for an hour, she could still perform those job. (*Id.*) But if the person needed to elevate her legs twelve inches one or two minutes per hour, she could not do light work. (*Id.*) The VE then clarified that light work requires a person "to be ready to move," such that a person who needs a regular routine of sitting and standing up would be unable to perform the listed jobs. (R. 531.)

## DISCUSSION

**I.     ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps one through four. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

Here, the ALJ found at step one that Smith has not engaged in substantial gainful activity since her alleged onset date of December 31, 2007. (R. 491.) At step two, the ALJ concluded that Smith has severe impairments of rheumatoid arthritis, obesity, and complex arteriovenous malformation of the right lower extremity. (*Id.*) The ALJ found at step three that the impairments, alone or in combination, do not meet or medically equal a Listing. (R. 492.) The ALJ then determined that Smith retains the residual functional capacity ("RFC") to perform light work with the following restrictions: she can never climb ladders, ropes, or scaffolds; she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she must avoid concentrated exposure to extreme cold; and she requires a sit/stand option that allows her to sit for one to two minutes after standing one hour. (R. 493.) The ALJ found at step four that Smith cannot perform her past relevant work. (R. 498.) At step five, the ALJ found that, based upon the VE's testimony and Smith's education, work experience, RFC, and age, she was able to perform jobs existing in significant numbers in the national economy up until January 24, 2010. (R. 498.) On that date, her age category changed and she was unable to perform those jobs, and was therefore disabled under the rules of the Social

Security program. (*Id.*) However, she was not disabled prior to January 24, 2010. (R. 499.)

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, or resolving conflicts in evidence. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, she must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425

F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Smith argues that three errors in the ALJ's decision mandate remand: (1) in assessing Smith's RFC, the ALJ failed to support her findings regarding Smith's sit/stand capabilities and her need for leg elevation, (2) the ALJ omitted consideration of the combined effects of her impairments, and (3) the ALJ performed a flawed credibility assessment. Two of these errors—the leg elevation issue and the credibility assessment—formed the basis of the Seventh Circuit's earlier remand of this matter. *Smith v. Astrue,* 567 Fed. App'x 507 (7th Cir. 2012). Because the ALJ has again omitted discussion of relevant medical evidence in assessing whether Smith needs to elevate her leg, the case must be remanded.

### A. RFC Assessment: Leg Elevation

When Smith's case first came before the court, a judge affirmed the Commissioner's decision, but the Seventh Circuit reversed "because the ALJ failed to explain why she did not believe Smith had to elevate her leg to reduce swelling or why she found Smith not credible." *Smith v. Astrue,* 567 Fed. App'x at 507. Smith now asserts that the ALJ erred in not including a leg-elevation requirement in her RFC and by failing to determine the frequency with which she must elevate her leg. [Doc. No.15 at 11–15.] As the Seventh Circuit observed in its previous opinion in this matter:

> There [is] evidence in the record that Smith had to elevate her leg, including her hearing testimony; the reports she and her husband filled out for the agency shortly after she filed her application; *records from her hospital stay, which included instructions to keep the leg elevated after discharge*; and records from the two follow-up appointments[.]

*Smith v. Astrue,* 467 Fed. App'x. 507, 510–511 (emphasis added). Smith now argues that the ALJ has again not supported her decision to reject this evidence.

An ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin,* 712 F.3d 351 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart,* 395 F.3d 737, 744 (7th Cir. 2005)). However, she "must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014) (citing *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)).

In rejecting Smith's testimony about her need to elevate her leg, the ALJ wrote that the May 2008 "hospital records do not document recommendations by physicians to elevate her leg." (R. 494.) Later, the ALJ elaborated, "there is only one reference [in the medical evidence] that she elevated her legs when possible." (R. 496.) These statements are incorrect because they overlook the record evidence that Smith was

indeed instructed to elevate her leg. The recommendation appears in her May 2008 hospital discharge instructions as follows: "ACTIVITY: Elevate right lower extremity when sitting." (R. 240, marked as Ex. 4F/42.) It might be understandable that the ALJ would overlook one page in a record exceeding 1200 pages, but for the fact that, in its earlier disposition of this case, the Seventh Circuit specifically pointed the ALJ to that page, as noted above. *Smith v. Astrue,* 467 Fed. App'x. at 511. In remanding at that time, the appellate court presumably intended the ALJ to review the evidence cited and, if ultimately unpersuaded by it, explain why. Instead, the ALJ again asserted that the evidence did not exist. This matter must therefore be remanded again for the ALJ to correct the error.

The ALJ did examine numerous medical records before concluding, "[t]here is no medical evidence…that [Smith] needed to elevate her leg constantly as alleged in her testimony" and "she elevated her legs when possible but not constantly." (R. 495-496.) Even if the Commissioner ultimately concludes that Smith's impairment did not require her to elevate her leg "constantly," the ALJ has not provided substantial evidence for an RFC assessment that includes no leg elevation requirement at all. Instead, the ALJ has assumed that Smith can stand for six hours, provided that she sit for a minute or two each hour. That assessment specifically excludes any leg elevation for those one or two minutes of seated time; in fact, the VE testified that a person who had to elevate her leg just twelve inches off the ground for one or two minutes every hour would not be capable of light work.[4] (R. 530.) Yet Smith, throughout the record, has testified that her

---

[4] The VE also seemed to retract her statement that a person doing light work could sit for one or two minutes after each hour, stating that, at the light exertion level, "you have to be in motion, you have to be ready to move, you have to be able to do things on the spur of the moment. If you are really in a by rote routine of having to sit down and stand up, and sit, it

14

legs swell and cause pain with standing *or* sitting. (*E.g.,* R. 45, 118, 158, 163, 521, 524.) In addition to the above-described discharge instruction and subsequent treatment note referencing leg elevation, numerous treatment records document Smith's persistent edema and episodic leg pain (*e.g.* R. 278, 281, 283, 318, 1061, 1089), the symptoms she has claimed are somewhat relieved by leg elevation. Dr. Vogelzang, the specialist who treated her complex AV malformations, averred that her "very rare" condition continued to cause "significant pain and swelling." (R. 948.) Independent consultative examiner Dr. Patel also noted that Smith's right mid-leg was five inches in diameter larger than her right. (R. 796.) The ALJ's finding that Smith does not elevate her legs "constantly" does not build the requisite logical bridge from the evidence to an RFC finding that allows for no leg elevation at all.

### B. Subjective Symptom Evaluation

Smith also argues that the ALJ erred in evaluating her credibility. Again, the chief issue is the ALJ's rejection of Smith's allegations regarding her need to elevate her leg. Because the ALJ relied on the same erroneous analysis here as she did in arriving at her RFC assessment, that is, omitting discussion of the hospital discharge note flagged by the Seventh Circuit, this issue must be revisited on remand.

We point out that the Social Security Administration has recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the SSA's sub-regulatory policies to "more closely follow [the] regulatory language

---

doesn't lend itself to these jobs at all." (R. 531.) This appears to place a limit on her earlier testimony that the named jobs could be performed by "an individual [who] needed a sit/stand option, meaning after standing for an hour be allowed to sit one or two minutes." (R. 530.) Though it is not the purview of this Court to "resolve conflicts in the record," the ALJ should do so on remand. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004).

15

regarding symptom evaluation" and to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. Therefore, the ALJ must on remand re-evaluate Smith's subjective symptom statements in light of the guidance provided by SSR 16-3p.

### C. Smith's Remaining Arguments

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Smith at this time.

### CONCLUSION

For the foregoing reasons, Plaintiff Florence Smith's motion for summary judgment is GRANTED and the Commissioner's cross-motion for summary judgment is DENIED. The Court remands this matter to the Social Security Administration for further proceedings consistent with this Opinion. It is so ordered.

**Michael T. Mason**
**United States Magistrate Judge**

**Dated: July 7, 2016**